UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
Charlotte DIVISION
DOCKET NO. 5:20-CV-00028

| | | |
|---|---|---|
| JEFFREY THOMAS OXENDINE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| ANDREW M. SAUL, | ) | |
| | ) | |
| Defendant. | ) | |

THIS MATTER is before the Court on Plaintiff Jeffrey Thomas Oxendine's Motion for Summary Judgment (Doc. No. 14), and Commissioner of Social Security Andrew M. Saul's ("Commissioner") Motion for Summary Judgment (Doc. No. 16). Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on his applications for Disability Insurance Benefits under Title II and for Supplemental Security Income under Title XVI.

Having reviewed and considered the written arguments, administrative record, and applicable authority, and for the reasons set forth below, Plaintiff's Motion for Summary Judgment is GRANTED in part and DENIED in part; the Commissioner's Motion for Summary Judgment is GRANTED in part and DENIED in part; and this matter is REMANDED.

I. BACKGROUND

Plaintiff filed a Title II application for a period of disability and disability insurance benefits on October 27, 2010, (Doc. No. 12 at 192), and a Title XVI application for supplemental security income on October 29, 2010 (Doc. No. 12 at 194). Plaintiff, on both applications, alleged disability beginning on January 15, 2010. (Doc. No. 12 at 192, 194). Plaintiff later moved to amend the onset date of the disability to December 27, 2010, in a motion before an Administrative Law Judge ("ALJ"). (Doc. No. 12 at 30). Both claims were denied on February 16, 2011 (Doc. No. 12

at 115), upon reconsideration on April 1, 2011, (Doc. No. 12 at 128, 136), and by an ALJ in a decision dated August 2, 2012, (Doc. No. 12 at 28).

After denial of a Request for Review by the Appeals Council on November 1, 2013, (Doc. No. 12 at 1), Plaintiff filed an action in this court challenging his denial, which resulted in a remand of the case for a new hearing and decision (Doc. No. 12 at 769). The rehearing before an ALJ likewise resulted in an unfavorable decision on September 7, 2016. (Doc. No. 12 at 824). Following a Request for Review, the Appeals Council issued an order of remand on September 26, 2018. (Doc. No. 12 at 856). A third hearing before an ALJ was held on April 25, 2019, (Doc. No. 12 at 731), which again resulted in an unfavorable decision (Doc. No. 12 at 661). The subsequent Request for Review with the Appeals Council was denied on February 12, 2020, (Doc. No. 12 at 651), after which Plaintiff filed the present action.

In the proceeding at issue, the ALJ determined Plaintiff both met the insured status requirements of the Social Security Act through December 31, 2014, and had not engaged in substantial gainful activity since January 15, 2010. (Doc. No. 12 at 667). The ALJ found Plaintiff to have the following severe impairments: "carpal tunnel syndrome, asthma, osteoarthritis, mood/depressive disorder, anxiety disorder and borderline intellectual functioning with autism spectrum. (Doc. No. 12 at 667). The ALJ determined these impairments neither individually nor in combination, met or equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, App. 1. (Doc. No. 12 at 667). In light of Plaintiff's impairments and in considering the record, the ALJ found Plaintiff to have the Residual Functional Capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b):

> [E]xcept he is limited to frequent handling and fingering bilaterally; frequent overhead reaching bilaterally; occasional stopping and no concentrated exposure to hazards or respiratory irritants. In addition, the claimant is capable of performing simple, routine and repetitive

tasks for 2-hour intervals throughout the day for the duration of the
workday but can have no more than occasional interaction with the
public and work under one supervisor effectively.

(Doc. No. 12 at 26). Plaintiff's past relevant work included work as a taper and as a lumber handler, described as a "medium" job with a SVP of 5 and a "heavy" job with a SVP of 2 respectively. (Doc. No. 12 at 679). The ALJ considered these against Plaintiff's RFC and testimony from the vocational expert ("VE") and found Plaintiff was unable to perform his past relevant work. (Doc. No. 12 at 679). The ALJ found further Plaintiff has at least a high school education and is able to communicate in English. (Doc. No 12 at 679).[1]

In considering Plaintiff's age, education, work experience, and RFC, the VE testified a hypothetical person with all such limitations would be able to perform the requirements of representative "light," SVP 2 occupations such as routing clerk jobs, marker jobs, and router jobs in the U.S. (Doc. No. 12 at 680). Based on the testimony of the VE, the ALJ concluded Plaintiff was capable of adjusting to other work existing in significant numbers in the national economy. (Doc. No. 12 at 680). As a result, the ALJ found Plaintiff was not disabled as defined in the Social Security Act from January 15, 2010, through the date of the ALJ's decision. (Doc. No. 12 at 680).

Plaintiff has exhausted all administrative remedies and now appeals pursuant to 42 U.S.C. 405(g). Plaintiff argues: (1) the ALJ failed to adequately develop the record by not considering the vocational impact of Plaintiff's functional illiteracy and limited math skills, and (2) the ALJ improperly concluded in step three of the evaluation on the issue of deficits in adaptive functioning. (Doc. No. 15 at 3).

## II. STANDARD OF REVIEW

---

[1] Evidence was also submitted indicating Plaintiff possessed reading and arithmetic abilities on a first-grade level, could do only simple addition and subtraction, and struggled to comprehend things communicated to him. (Doc. No. 12 at 1174). The record does not appear to show this information was considered or communicated to the VE.

When reviewing a Social Security disability determination, a reviewing court must "uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (internal quotation marks omitted). It "consists of more than a mere scintilla of evidence but may be less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir.2012) (internal quotation marks omitted). In reviewing the record for substantial evidence, the Court does "not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Id. (brackets, citation, and internal quotation marks omitted).

In considering an application for disability benefits, an ALJ uses a five-step sequential process to evaluate the disability claim. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Pursuant to this five-step process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy. Id.; see also Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017) (citing Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015)); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See Lewis, 858 F.3d at 861; Monroe v. Colvin, 826 F.3d 176, 179–80 (4th Cir. 2016).

"If the claimant fails to demonstrate she has a disability that meets or medically equals a listed impairment at step three, the ALJ must assess the claimant's residual functional capacity ("RFC") before proceeding to step four." Lewis, 858 F.3d at 861. Here, the ALJ considers the claimant's residual functional capacity ("RFC") to determine what is "the most" the claimant "can still do despite" physical and mental limitations that affect her ability to work. Id. § 416.945(a)(1); § 404.1520(a)(4)(iv).

> In making this assessment, the ALJ must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations. Only after such a function-by-function analysis may an ALJ express RFC in terms of the exertional levels of work.

Monroe, 826 F.3d at 179 (citations and quotations omitted). Once the function-by-function analysis is complete, an ALJ may define the claimant's RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1. See generally 20 C.F.R. §§ 404.1567, 416.967 (defining "sedentary, light, medium, heavy, and very heavy" exertional requirements of work).

> When assessing the claimant's RFC, the ALJ must examine "all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," 20 C.F.R. §§ 404.1525(a)(2), 416.925(a)(2), "including those not labeled severe at step two." Mascio, 780 F.3d at 635. In addition, he must "consider all [the claimant's] symptoms, including pain, and the extent to which [her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," 20 C.F.R. §§ 404.1529(a), 416.929(a). "When the medical signs or laboratory findings show that [the claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [her] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [her] symptoms limit [her] capacity for work." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

> After assessing the claimant's RFC, the ALJ continues with the fourth step, where the claimant must establish she is unable to perform past work. Mascio, 780 F.3d at 635.

Lewis, 858 F.3d at 862. If the claimant meets her burden as to past work at step four, the ALJ proceeds to step five.

> "At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." [Mascio, 780 F.3d at 635 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429)]. "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." Id.

Lewis, 858 F.3d at 862 (citations and quotations omitted). If the Commissioner meets this burden in step five, the claimant is deemed not disabled, and the benefits application is denied. Id.

III. ANALYSIS

Plaintiff makes two assignments of error on appeal. First, Plaintiff contends the ALJ erred in failing to consider the vocational impact of Plaintiff's functional illiteracy and math skills, which prevent him from performing the functions of the jobs provided by the VE. (Doc. No. 15 at 3). Second, Plaintiff contends the ALJ's finding that Plaintiff did not meet the requirements of Listing 12.05 for intellectual disorders was not supported by the record. (Id.).

**A. Step Five Failure to Develop the Record**

Plaintiff argues the record shows he does not possess the requisite reasoning development and mathematical development necessary for the jobs the VE indicated Plaintiff could perform. (Doc. No. 15 at 8). Plaintiff identifies this error first in the ALJ's failure to consider evidence showing Plaintiff could only read single syllable words and perform simple addition or subtraction, and failure to communicate the same to the VE. (Doc. No. 15 at 5). Plaintiff also contends the ALJ's finding that Plaintiff possessed a high school education is unsupported by the record. (Doc. No. 15 at 5-6). The Commissioner disagrees, arguing the ALJ considered the proper evidence, and

even presuming the additional limitations posed by Plaintiff, he would be able to perform at least one of the jobs identified by the VE. (Doc. No. 17 at 10-11).

In step five of the sequential evaluation, vocational factors are considered together with a plaintiff's RFC if the question of disability has not already been resolved. 20 C.F.R. § 404.1560(a). Education as a vocational factor is generally shown through formal schooling and educational abilities may be determined by numerical grade level. 20 C.F.R. § 404.1564. However, the regulations explicitly recognize "grade level . . . completed in school may not represent your actual educational abilities" and other evidence may show your actual abilities are higher or lower. Id. Additionally, for a VE's opinion "to be relevant or helpful, it must be based upon a consideration of all the evidence of record." Kearse v. Massanari, 73 F. App'x 601, 603 (4th Cir. 2003).

When asked whether a person with the same RFC as Plaintiff could perform other work, the VE named three jobs which could be done: routing clerk, marker, and router. (Doc. No. 12 at 761-762). In assessing step five of the sequential evaluation, the ALJ relied upon this testimony to determine when "considering the claimant's age, education, work experience, and residual functional capacity" Plaintiff could perform other work "that exists in significant numbers in the national economy." (Doc. No. 12 at 680). Where the ALJ relied on the conclusion of the VE, he failed to provide all information needed to make the VE's opinion relevant or helpful. The ALJ's hypothetical posed to the VE required limitations to handling and fingering, overhead reach, occasional stooping, no concentrated exposure to hazards and respiratory irritants, simple, routine, and repetitive tasks, and limited interaction with the public. (Doc. No. 12 at 768). No mention was made, either in the ALJ's instructions to the VE or in the ALJ's own considerations, of Plaintiff's inability to do more than read single-syllable words or perform more than simple addition and subtraction.

The record also shows that, while Plaintiff completed high school, he did not possess a "high school education" as contemplated by the regulations. The education levels contemplated by the regulations are as follows:

> (1) Illiteracy. Illiteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling.
>
> (2) Marginal education. Marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. We generally consider that formal schooling at a 6th grade level or less is a marginal education.
>
> (3) Limited education. Limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is a limited education.
>
> (4) High school education and above. High school education and above means abilities in reasoning, arithmetic, and language skills acquired through formal schooling at a 12th grade level or above. We generally consider that someone with these educational abilities can do semi-skilled through skilled work.

20 C.F.R. § 404.1564. The hypothetical person used by the VE to make her determination was given the same level of education which the ALJ determined Plaintiff had: a high school education. But because the regulations do not use grade level to show educational ability when conflicting evidence is present, evidence of Plaintiff's limited reading skills should indicate a high school education does not reflect the appropriate level of educational ability. The Commissioner's arguments here are unpersuasive. While some evidence may support the conclusion that Plaintiff completed formal schooling through high school and received a certificate for such, the court cannot agree substantial evidence supports this conclusion, particularly where Plaintiff's ability to

8

read only single syllable words, do simple addition and subtraction, and his limited understanding of what is spoken to him are not reflected as part of the hypothetical to the VE. Without doing so, the VE is left only with the information that Plaintiff possessed a high school education and the corresponding levels of educational abilities to supplement the analysis.

In other words, the educational background given by the ALJ appears to reflect development levels greater than those possessed by Plaintiff under the record. Remand is therefore appropriate. Without any explanation from the ALJ as to how Plaintiff's limited skills factored into the assigned educational ability, this Court is effectively left to guess as to how the ALJ determined Plaintiff's ability to perform the functions of the jobs named by the VE when considering Plaintiff's further impairments. Herren v. Colvin, 2015 WL 5725903 at 7 (W.D.N.C. Sept. 30, 2015). On remand, the ALJ can provide an explanation as to how Plaintiff's further mental limitations affect his ability to perform work related functions as a routing clerk, marker, and router and qualify the determination as to Plaintiff's educational background.

Accordingly, on Plaintiff's first assignment of error, Plaintiff's Motion for Summary Judgment (Doc. No. 14) is GRANTED and the Commissioner's Motion for Summary Judgment (Doc. No. 16) is DENIED.

**B. Step Three Listing Requirements**

Plaintiff's second assignment of error contends "The longitudinal medical evidence does not support the ALJ's findings at step three of sequential evaluation regarding the issue of deficits in adaptive functioning." (Doc. No. 15 at 3).

Given the Court's resolution as to Plaintiff's first assignment of error, it is unnecessary to set forth a full analysis of this issue. United States v. Rachel, 208 F. App'x 236, 241 (4th Cir. 2006) (declining to address alternative issues presented by the parties). However, having considered this

assignment of error, the Court summarily concludes that substantial evidence supports the ALJ's conclusion at step three of the sequential evaluation. The ALJ gave heavy weight to the testimony of a medical expert ("ME") at the hearing in reaching his conclusion. (Doc. No. 12 at 670). The ALJ considered other evidence in reaching his conclusion, such as that offered by Plaintiff and explained why he chose to give it less weight. Thus, to find error here would be improperly reweighing conflicting evidence and substituting the Court's own judgment for that of the ALJ. See Hancock 667 F.3d at 472.

Accordingly, on Plaintiff's second assignment of error, Plaintiff's Motion for Summary Judgment (Doc. No. 14) is DENIED and the Commissioner's Motion for Summary Judgment (Doc. No. 16) is GRANTED.

IV. CONCLUSION

In posing the hypotheticals to the VE, the ALJ only stated limitations related to Plaintiff's movement, interactions with others, and time periods for work. (Doc. No. 12 at 768). No mention of any other mental limitation appears. The ALJ erred in failing to communicate these further vocational limitations to the VE. This error is not harmless, as the potentially incomplete RFC formed the basis of the hypothetical which was submitted to the VE, and VE testimony based on incomplete hypotheticals may not provide a basis for an ALJ's disability determination. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). Accordingly, remand is appropriate.

The Court explicitly notes that in ordering remand pursuant to sentence four of 42 U.S.C. § 405(g), the Court does not take a position on the merits of Plaintiff's application for disability benefits. See Patterson v. Comm'r of Soc. Sec. Admin., 846 F.3d 656, 663 (4th Cir. 2017). "Under § 405(g), 'each final decision of the Secretary [is] reviewable by a separate piece of litigation,' and a sentence-four remand order 'terminate[s] the civil action' seeking judicial review of the

10

Secretary's final decision." Shalala v. Schaefer, 509 U.S. 292, 299 (1993) (quoting Sullivan v. Hudson, 490 U.S. 877, 892 (1989)).

For these reasons, Plaintiff's Motion for Summary Judgment (Doc. No. 14) is GRANTED in part and DENIED in part; the Commissioner's Motion for Summary Judgment (Doc. No. 16) is GRANTED in part and DENIED in part; and this matter is REMANDED.

IT IS SO ORDERED.

Signed: May 12, 2021

Frank D. Whitney
United States District Judge